United States Court of Appeals for the Ninth Circuit is now in session. Good morning, everyone. Can you hear me? Yes, good morning, Your Honor. All right. This is the time and place set for argument in the consolidated cases of Trump v. United States District Court and American Federation of Governed Employees v. Trump. Counsel for Petitioner, please proceed. Good morning. May it please the Court, I'm Maxim Baldi for the government. I'd like to try to reserve five minutes for rebuttal. All right, Counsel, please be reminded that the time shown on the clock is your total time remaining. Yes, thank you, Your Honor. We're here on a mandamus petition because after assuming that the agency's plans were privileged, the district court held that the plaintiffs had overcome the privilege. That was clearly erroneous and mandamus is warranted to correct that error. Now, after the Supreme Court said that plaintiff's primary theory is likely invalid, plaintiffs have gone on a fishing expedition in search of a viable legal theory. And the one that the district court relied on here, the one that I believe that we're suing, is that it seems to be an APA challenge to what they call implementation of the plans. It's important to understand implementation of the plans means one of two things. It means either a reduction in force or an order of an agency changing its structure in some way. So, in other words, they're seeking discovery in this APA challenge because they assert that if an agency conducts a RIF in the future, the plans would necessarily be part of an administrative record for that future agency action. But even assuming there could be an APA challenge to a RIF, the relevant question at that time would be, how did the agency justify its decision when it sent a RIF notice? You cannot analyze the agency's reasoning before it acts because the court needs to know what the agency says when it decides to eliminate positions. And either way, a plan is not going to be as positive. Either the agency will not adequately explain its decision in its RIF notice, in which case it would be arbitrary and capricious, or the agency will adequately explain its decision, but the decision has to be evaluated on those contemporaneous terms. The plans just don't play a role there. Isn't there a discovery dispute embedded into all of this? There is a discovery dispute about whether the government should have to produce the plans. But again, to the extent that we're talking about an APA challenge, APA challenges proceed on an administrative record, and there's a very narrow set of circumstances where the record can be expanded, and the burden is on the party that wants to expand the record to show that one of those narrow circumstances is met. What would be the administrative record in this case? Well, that's a fair question, Your Honor, because we think that, you know, depending on what exactly the plaintiffs are challenging, it's not totally clear. The administrative record for a RIF is not something that is normally put together because these, you know, RIF challenges generally go through the Merit Systems Protection Board review. But presumably it would be the documents that the agency had, its decision, its RIF notice, and whatever was before it but not deliberative when it made that decision. But the fact that the agency said at time one that we are contemplating a certain RIF really has no bearing on the fact that at time two it actually takes a decision to order a RIF. So we, you know, you can look to the example of agencies all the time will say here are, you know, internally will say here are priorities, here are things we want to work on in the coming year. That's not relevant to the fact that at some point they will actually implement some of those priorities and not implement others. But it appears that they're already implementing a fair amount. Isn't that right? I believe that some RIF notices have already been issued. Some, like how many do we know? I don't know the number, Your Honor. Is it your position that there is no decision, there is no decision document for the RIF? I'm sorry, Your Honor, I couldn't hear you. I'm sorry, is it your position that there is no decision document for the RIF? There is no decision document. Yes, yes, I understand. Thank you. The decision document for a RIF would be a RIF notice, which is a document that's prepared in every RIF that goes out and says to the employees, I believe to unions, sometimes other people get noticed. It says the agency has decided for these reasons that it's going to eliminate these positions. Here are, you know, the sexually required notice factors. Here are your appeal rights and whatever else. That would be the decision document. The decision document is not a plan that contemplates that the agency might one day take such an action. So was that done in this case, the notices were given? So I believe there are, at least for some of the defendant agencies, we have 20, 21 defendant agencies here, at least some of the defendant agencies that we have sent some RIF notices. So the ones that haven't sent RIF notices, have RIFs been conducted in the absence of notices? I don't believe a RIF can occur without a RIF notice. Whether it can or can't, has it happened that RIFs have been conducted in the absence of notices? I have no reason to think that, Your Honor. You say you have no reason to think that. What's the evidence in the record before us? I mean, Your Honor, I'm being cautious, not because I am trying to hedge. I'm being cautious because the way an agency conducts a RIF, there's regulations or statutes, is it sends out a notice. There's really no other way to do it. And so, you know, I don't know if someone could try to call some other action, a RIF, and say that it's occurred without a notice. But that's just, there's no reason to think that that's what's happened. But you should have the record of all the notices that have been sent out, correct? Agencies would have a record of the notices they've sent out. But you as their counsel wouldn't have that? I could, you know, we could certainly obtain those from the agencies. I don't have them in front of me, in part because what we have, I think, if we look at the complaints that the plaintiffs have filed, they've said, here's an executive order and a memorandum. And we think these are facially unlawful. But we think the way they've been implemented is in some way unlawful. But they haven't said, you know, for example, the Department of, I'm just making this up, the Department of Health and Human Services does IT in field offices. And they want to centralize it in headquarters. And they think we can reduce our IT staff by 50%. And they've done the analysis. They said this is an efficiency. If they then send out a notice saying we're going to reduce these positions and change our structure, that would be an action and get past our special objections. If plaintiffs had a complaint file that said we think this is unlawful, then the action would be that RIF notice. But that's not what we have. We have a complaint that says there was an executive order and a memorandum that called for agencies to prepare to take RIFs, prepare to restructure, to examine their structures and their structure requirements and see what resources and personnel they need to fulfill those. And that's what plaintiffs challenged. So at the level of sort of individual RIFs, I don't think that's what's being challenged. Certainly in the complaint it's completed now. And so there's not a record that anyone has assembled. And we have not yet filed an answer. We have not filed a certified index for an administrative record. I'm sure that if we get there, there will be litigation about what the certified index should look like, what the record should look like. That's the point where once you have a certified record, a court could then have pure litigation about whether one of those narrow exceptions to expand the record might apply and whether plaintiffs would meet their burden to expand the record. So this is not, of course, an ordinary case where we have a certified record for review of an agency action. What we have is ongoing agency activities of an undetermined nature. And they're asking for all kinds of discovery to figure out what's happening. Why shouldn't they be allowed to have that discovery? Because, Your Honor, this is an APA case. And that is the nature of the challenge that I understand they're pursuing here. That's the basis where the court said, the district court said, I'm authorizing this discovery. And, you know, there are discovery is just not something that, you know, the law is pretty clear. Discovery is generally an exception. And you have to be a set of circumstances. It can't just be that the agency. But the argument the argument is on the side of the plaintiffs that these large scale reductions in force, you call them riffs, riffs, ordinarily fairly small. But apparently the contemplated reductions in force may be enormous. The argument is that these are unlawful. Well, why can't we get discovery to find out what's actually happening? So the district judge can rule based on facts rather than speculation. So, Your Honor, I think the question would be, why is it unlawful and how the discovery rate relates to the claim? Well, unless we know what's happening, it's going to be hard to tell whether it's unlawful. So, Your Honor, I think I think that's just I respectfully I think that gets this backwards. Right. The question is not you don't say I think something's wrong. I'm running into court and demanding a lot of discovery so I can figure out what's wrong. So I can come up with a legal theory so I can then plead it and sue. I don't think I don't think I don't think the legal theory is very much in question. What's in question is what's actually happening. So, Your Honor, I guess what's what's in question, I suppose, would be what is happening, what might happen at some point in the future, because that's what the plans are about. So the question is, what is happening now under the executive order? What are the agencies doing under the executive order now? That's the question. So, Your Honor, some agencies are, I believe, proceeding with plans to reduce their their staffing levels. Other agencies are not. And I would point you to. Well, OK, so you're just asserting that as a question of fact. How do you know? So, Your Honor, what I point you to is the most recent declaration from the Office of Personnel Management. This is docket entry 208-1 from OPM. And what that declaration points out is that since May of 2025, when the district court entered its temporary restraining order, some agencies have proceeded with risks. Some have decided that they're not going to proceed with reductions in force. It points to, it cites some public reporting that I believe the VA and Department of Labor have evaluated and said, we thought we might need to undertake risks. We are reevaluating. We think we don't. And other agencies are looking at their staffing needs and saying, you know, we've had through attrition and retirement, we actually think we've hit the numbers we want to hit. What we're talking about here, as I understand it, is a challenge to these plans. And part of the problem with this theory is that the plan is really a snapshot in time of what an agency's thinking that was sent to OMB and OPM for sort of, you know, interagency consultation and discussion. But it's not an individual agency action of the types can be challenged. Well, Councilor, if some risks are actually taking place, that's not something that's anticipated for the future or that's in the planning stage. It's actually being implemented. Isn't that correct? So, Your Honor, let's assume that an agency yesterday issued a risk notice. And plaintiffs want to challenge that because under their theory, they think that the agency will be violating some statutory obligation by the risk notice. The way to do that is, one, to amend their complaint and challenge that risk. But, two, the question would be, assuming APA review is available, and we'll assume that here, is that action arbitrary and capricious? And the question would be, did the agency adequately consider the relevant factors and explain its decision when it ordered a risk? And this sort of pre-decisional, incohate set of ideas of what they might have done at one point in the past is just not relevant to determining whether that actual final agency action is arbitrary and capricious. But, Councilor, how are the petitioners supposed to know when an agency is conducting risks? How are they supposed to know that? Well, I'll note that the petitioners include, I think, all the major government employee unions, and they're representing their members. And the people who get risk notices are members. And I believe in many circumstances, the unions also get a copy of the notice. The fact that the risk is occurring isn't something that is secret or deliberative. That's a final agency action. But the sort of internal agency discussions about what they may or may not do, that is what the district court assumed was deliberative. And that was privilege, deliberative process privilege. And there's just no basis, you know, in this posture at this time to overcome. Who has the burden of showing that the deliberative process privilege can be overcome? So the government has the burden to establish the privilege. Once the privilege is established, and here the district court assumed that the privilege applied, then the plaintiffs have the burden to overcome it. And to the extent that they're overcoming it by saying this should be part of the administrative record, or we should expand the administrative record, they also have the burden of showing that the administrative record should be expanded. What do they have to show? To show that the privilege is overcome? They would have to show that their need for the information in the context of this case outweighs the government's need to keep the information confidential. And typically that goes to whether it would significantly chill the candor of agency deliberations, or whether there would be other adverse effects from disclosure. But I'll note that that really doesn't seem to be much of the analysis the district court performed here in just sort of holding that the privilege was overcome. So what's your strongest case? What case authority most strongly supports your argument that this process falls within the deliberative process privilege? What case would you cite us to as guidance for determining whether or not the deliberative process privilege applies in this context? Yeah, I think this court's decision in National Wildlife Federation, this is from 1988, is probably our best case, which talks about how recommendations on how to deal with problems is the essence of the deliberative process. I think there's also a decision from this court that is quite helpful from just a few years ago, and that was, I apologize, Center for Biological Diversity. And that is more a case about final agency action, but it's relevant in that what that said, what that looked to was an agency, set of agency planning documents. And I think it's really analogous to what we have here. And the fact that we think this is not final is particularly important. But in that case, the National Forest Service, some part of the Department of Interior was required by statute to put together a document called a plan about how we deal with certain endangered species issues. And this court said, that plan is not a final agency action. It's not the sort of thing that's reviewable under the APA, because it's just a roadmap. It's what the agency might do, but it doesn't bind the agency to take those actions. That's exactly what these plans are here. That's why these are sort of pre-decisional deliberative documents and why they fit within the privilege. Counsel, did either of those cases discuss the deliberative process privilege? Yes, Your Honor. Could you give me the site, the specific site page? Yes, Your Honor. National Wildlife Federation is 861 F2nd and the pin site is 1121. The case starts at 1114. Okay. And for Center for Biological Diversity? Yes, Your Honor. Sorry, I don't have it on my cheat sheet. Just give me one moment. The citation is 58 F4, 412 and the most relevant pages are 417 to 18. All right. Thank you, Counsel. If I understand right, the district court assumed that the deliberative process privilege applied. Is that right? That is correct. Okay. And the question is whether the petitioner or the respondent carried his burden, whether the plaintiffs carried his burden, showing that they were entitled to see the documents. Yes, I think that's the core question. Okay. And I think the reason, you know, the reasons why they did not carry that burden are that they have to show why they need it in this case. And I think as we've been discussing all along, the plans just don't bear on the sort of final agency actions that they might be able to challenge. And so they can't show the need, but they also can't show the need because of the stage we're at, the posture we're at. This is all very premature. To get to the point where you have, where you assemble an administrative record and decide that it's inadequate, you have to go through a lot of steps first. There's a motion to dismiss pending. That could be potentially dispositive. As I understand it, a motion to hearing is set for that next Friday. At the very least, the court should have to rule on this potentially dispositive motion before a court of discovery. Then we need to litigate, you know, whether these are final agency actions such that an administrative record be produced. What the record would look like. Once a record is certified, there'd be litigation about whether to be expanded and whether plaintiffs can meet their burden to expand it. You know, this sounds an awful lot like you're trying to get us to micromanaging the way the district court handles its docket. We don't ordinarily do that. And particularly, we don't do that by mandamus. So, respectfully, I'm not asking you to micromanage. I'm asking you to compel the district courts to adhere to basic principles of how to handle administrative law litigation. And I would point to as an example of where mandamus was appropriate in this context, the Supreme Court's 2017 decision. It's in the United States. It probably isn't very helpful, but it's a decision about the decision about docket rescission. And in that case, the district court ordered beforehand with positive motions and a bunch of other things, ordered an agency to expand the administrative record. And the government went up on mandamus, and this court denied it, and the Supreme Court summarily reversed. And what the Supreme Court said was the district court has an obligation to try to avoid a clash between, you know, the executive branch and its, you know, internal processes and the needs of discovery. It needs to handle these potentially dispositive things first. And only at that point should it consider whether to expand the record. In this case, you know, where I think we're potentially we have an even more significant problem, because at least in the DACA case, there was sort of a clear understanding, a clear theory of how expanding the record would, you know, at least potentially play into the material to the claims that players want to raise. But if, you know, these are, I think these are deliberative documents. They are, the district courts assume they were privileged, which means definitionally they're deliberative. And what this court held in Bloomfield's biodiversity project is that deliberative materials aren't part of the administrative record. And it relied on the DC Circuit's Oceania decision to brief that holding, where the analysis was that it's just deliberative materials just are not material in any way to APA litigation. And so if that's the, what we're talking about, and I think it is, then we are a step further removed from the type of discovery that the Supreme Court's office just a bit merrily ordered a halt to in 2017. So just to go back to where we started, the administrative record, in your view, is the RIF notice itself. Is that correct? I think to the extent that the final agency action being challenged is a RIF. The administrative record, the final decision would be the RIF notice. It would certainly include that. I don't know whether it would include something else. I'm not sure if an administrative record has ever really been put together for a RIF because normally these are MSPB cases that are handled differently. But at the very least, it would include the RIF notice and it would exclude anything just pre-decisional. It would exclude anything that was pre-decisional? Yes, Your Honor. And so do we have to accept the... Excuse me. I'm sorry. It would include pre-decisional and deliberative material or things that are intertwined with that sort of purely factual material that's segregable would not be included within the administrative record. Do we have to accept the district court's assumption that the deliberative process privilege applied? I don't think you do, although to the extent that you're going to authorize discovery on grounds that the district court didn't reach, I don't think you're compelled to accept that assumption. But I don't think there's really any basis here to say that these documents, which are prepared within an agency to help them make decisions, which give basically guidance between agencies about what they're thinking. I don't use any grounds to think they're not deliberative. And in terms of whether the privilege and the harm of disclosure, I think there's a couple of things that I want to make sure that I highlight. One of them is that these are documents that are prepared at sort of an operational or HR or policy level. This is not a lawyered process. But if there is the fear that these will be disclosed to litigation opponents, it might provide some sort of roadmap for future litigation. It makes it so agencies can be less candid in what advice they can put in writing. It makes them have to think about not just the best way to go forward, but to issue concerns. Can I interrupt for a moment? Your time is running. We have another question in front of us, and that's the motion to remand to the district court. Do you intend to address that as part of your argument? Yes, I'm happy to address that. I think in short, the plaintiffs sought a P.I. They got a P.I. We are entitled to an appeal as of right and we're entitled to a decision on it. There are a handful of rare circumstances where it might be. It might make sense to go back to district court, you know, to do a limited remand. I don't think any of them apply here in terms of the Supreme Court stay decision. We know exactly what the district court thinks about it because it issued an order saying that it thinks that, you know, it was an inherently tentative decision and that it's too inscrutable to decide whether it was about the legal theory or the evidentiary record. In terms of whether the chance to hear those arguments in the first instance, the district court has written 90 some odd pages about these very arguments presented to the Supreme Court. I think the scope of relief issue is at most sort of ancillary in this case. And I don't know what factual developments are that could merit another look. But the district court didn't reach claim six and seven. Why wouldn't we remand to have the district court rule on six and seven? Because the district court, you know, the district court could have reached those claims, but it didn't. But it did enter a P.I. on that basis. And what the government is entitled to is a decision about whether that P.I. was properly entered. And that's what we've briefed on the merits and what we're prepared to put forward to a decision. You know, I don't think there's anything precluding the district court from conducting additional proceedings on claims that weren't included in its initial order. But we are entitled to a decision on that order. But plaintiffs are not entitled to a do over just because the Supreme Court has thrown cold water on their briefs. The Supreme Court decision did not have much analysis in it. It did not. I think what the Supreme Court said recently in Willcox, I believe, was that it's a decision should impact how court exercises discretion. It should be guiding. And I think the you know, the nature of the arguments that were presented and sort of the, you know, near unanimous nature of the holding should weigh heavily on how that someone about how court values merits. It's difficult. It's difficult for the lower courts if we don't have any guidance in that just kind of holdings or bottom line rulings. I understand, Your Honor. And I think one of the best ways here would be for this court to issue a decision on the P.I., which should give, you know, fully reasoned guidance to the district court. I see I'm running low on time and I would like to reserve the remainder for rebuttal. All right. Thank you, counsel. We'll hear from respondents. Thank you, Your Honor. Stacey Leighton on behalf of the respondents. I'd like to begin by addressing several of the false premises that Mr. Baldi's argument rests on. First, Mr. Baldi assumes that the only claims that the plaintiffs have remaining in this case are APA claims. That is not true. Plaintiffs have always asserted and continue to pursue ultra virus claims against OMB, OPM and DOJ. The three what we call implementing agencies in this case. And there is no question that in this circuit, an ultra virus claim may proceed alongside an APA claim. This court's precedent in Sierra Club and we are entitled to discovery based on our ultra virus claim. The second false premise I would like to identify is that we are not only challenging under the APA and our ultra virus claims, the implementation of the ARPs. The complaint in this case has always challenged the implementing agencies approvals of the ARPs, the disapprovals of those ARPs and the directives that those implementing agencies are giving to the other agencies as to the level of cuts, how they should cut and what they should do. And those claims also remain in this case. The third false premise I would like to identify is that we are not only challenging RIFs in this case. We are challenging the RIF and reorganization decisions that includes not only the RIF notices that go out to employees, but also includes the closure of offices, the transfer of functions, the placement of employees on administrative leave. So it is a whole series of actions which illustrates why the idea that the administrative record would only be the RIF notice is really, really just could not possibly be true. The fourth false premise is that this case is entirely future looking. As your honors have pointed out, by the time the plaintiffs filed this case, there had already been at least 10 large scale RIFs conducted by the defendant agencies terminating tens of thousands of employees or giving them actual separation dates and putting them on administrative leave. And this court's decision on the stay order found that and mentioned those. The district court's order mentioned those. And I can point your honors to the places in the record that identify those. The fifth false premise is that ARRPs are just a snapshot in time, that they are just a plan and that they are never, ever final. That is a factual assertion that counsel is making that is contrary to the findings that the district court made in this case. The district court found that once an ARRP is approved, it is a final agency action. That is something that this court also recognized in its decision on the stay ruling and that it has consequences when they are approved. And so for that reason, as well as others that I could get into, if the courts are interested, the National Wildlife Federation and the Center for Biological Diversity cases are very different. Those were roadmaps, plans. Those were things that did not have actual legal consequences. I have other points to make, but Judge Rawlinson, it seemed like you had a question you wanted to ask. I just had a question because you were talking about the fact that you're challenging other issues. So what would the record look like for your challenge of those issues? What would discovery look like for those issues? The first step in discovery, we believe, would be the ARRPs and the communications that show the directives that the implementing agencies were giving to the numerous federal agencies. The administrative record, if that's what your honor is getting at, would need to include what the agencies considered in making the decision to approve the ARRPs. When the OMB and OPM took that action and approved the ARRPs, they obviously considered the ARRP. And Judge Olson found that the agencies could not move forward until those ARRPs were approved by OMB and OPM. So OMB and OPM would have considered the ARRP when they decided whether to approve it. Anything else that the agencies relied on would necessarily be part of that administrative record. Even as I pointed out, Mr. Baldy proceeded based on the false premise that we were only challenging implementation acts. But even as to the implementation acts, the ARRPs that were approved by OMB and OPM would also necessarily be part of the administrative record. And so, as I noted, we have an ultra-virus claim that allows us to obtain discovery. But even if we only had an APA claim in this case that was remaining, we would be entitled to production of those ARRPs as part of the administrative record. And I would like to point out that defendants are not even saying we will produce the ARRPs that were approved and that were being implemented. For example, 10,000 employees were placed on administrative leave and fired from the Department of Health and Human Services. They are not saying, okay, well, that one is final and we will produce the administrative record, including the ARRP that was approved and allowed them to go forward with those layoffs. They are saying that they will not produce anything. And the district court exercised its sound discretion to determine that it needed to have these parts of the administrative record or this discovery and that the need for that overcame the privilege. And the district court's conclusion rested on the district court's analysis of the centrality of those documents to the issues in the case, on the fact that defendants have not revealed anything about these actions other than simply implementing them, and on questions and concerns that the district court had, as the district court noted in its filing in response to this mandamus petition, about the accuracy of some of defendants' representations, including their representations to this court and to the Supreme Court, about how many RIFs were blocked by the preliminary injunction. So, counsel, on the petition for mandamus, there has to be clear error shown. Why, in your view, was no clear error shown on the part of the government? Exactly, Your Honor. The mandamus standard does require that it be clearly erroneous as a matter of law. That standard is particularly relevant here, where what the district court did was assume that the privilege applied, and I agree with Mr. Baldy that this court doesn't have to accept that conclusion, but then the district court weighed the factors that this court has directed are appropriate in litigation to decide whether that qualified privilege was overcome. It would be quite unprecedented for this court to hold that a district court's weighing of the factors based on the facts that were before it and the issues in the case was clearly erroneous as a matter of law. And I would just like to point out that the case that Mr. Baldy identified as the most on point, the National Wildlife Federation case, that was a case that was considering the deliberative process privilege, but it was a FOIA case. It was a Freedom of Information Act case. Now those cases under FOIA are relevant in terms of the nature of the deliberative process privilege, but that was not a case where relevance to litigation was being weighed in terms of our need for these documents. And so that illustrates why this case, this mandamus petition, is such a mismatch with the type of decision that the district court was making. The district court ordinarily has great discretion to manage discovery and to make an application of those factors, and there's really no reason for this court to hold that that was clear error. In their briefing, they emphasize this a little bit less at oral argument, but in their briefing, defendants attempted to overcome this very high clear error standard by promising their petition on the idea that the Supreme Court stay order ends this case completely. And that is something that just does not withstand any scrutiny for at least four reasons that I will explain. The first is that it is very clear from this court's precedent and from the words of the Supreme Court itself that a stay decision is not the same as a merits decision. That a stay ruling is something that they do looking at the record at a point in time on a very quick basis and that that does not resolve the merits. In fact, they sent it back down for the merits to be resolved. The second is that the standard is very different. The standard on a stay decision and the basis for their ruling to the extent that we can ascertain it is likely success on the merits. Finding that somebody is unlikely to succeed on a claim does not mean that that claim must be dismissed as a matter of law. And so that that is another reason why it is clear that it does not end this case. Third, as your honors pointed out, there were numerous claims that were not before the Supreme Court. Those would be the claims against OMB, OPM, and DOJ based on their other actions besides the memorandum, their directives to make certain cuts, and their approvals and disapprovals of AARPs, and the claims against the agencies under the APA's arbitrary and capricious standard and unlawful standards. Those claims were reserved by the District Court. This Court's ruling on the stay did not address those claims, and the Supreme Court did not address those claims. And then the fourth reason why the Supreme Court's order does not end this case is that the Supreme Court itself made clear that it was contemplating that there would be further challenges to the AARPs and the implementation of those AARPs. And Justice Sotomayor's concurrence was particularly explicit that plaintiffs, that there would still be challenges to the implementation of the memorandum and the executive order. Even if this Court were to assume that the Supreme Court order did resolve the merits of the claims that were, that were the basis for the preliminary injunction, plaintiffs still have those ultra-virus and APA claims that remain in the case on which the District Court was entitled to order discovery, and on which the District Court was entitled to order the production of the AARPs as part of the administrative, as part of the administrative record. I would like to also point out that the District Court did give plaintiffs multiple opportunities, at least two opportunities to justify the deliberative process privilege, and to propose a narrowing or reasonable redactions to the AARPs. Twice the District Court gave them that opportunity, and I can point to where in the record that approves. Those are at the addendum, page 29. The opposing counsel says that you have the burden of showing exception to the deliberative process privilege. Do you disagree with that? Your Honor, it is clear that they have the burden to establish the applicability of the deliberative process privilege. I do not think that we actually do have the burden of showing that the privilege is overcome. What this Court's precedents have said is that there is a multi-factor test that the District Court is to consider as to whether the relevance overcomes, and I would point this Court to FTC v. Warner Communications. The Court considers the relevance of the evidence, the availability of other evidence instead of this, the government's role in the litigation, and the extent to which disclosure would hinder the frank and independent discussion of contemplated policies and decisions. And I think at one point Mr. Baldi suggested that the District Court did not apply those factors. That is not the case. The District Court did discuss each of those factors, found the evidence was highly relevant, found that there was no other source from which plaintiffs could obtain this evidence. The government, obviously its role in the litigation is that it's a party, and the District Court did rule that the one piece of evidence that the defendants put in, which was the Billy Declaration as to why disclosure would hinder frank discussions, was specious because it relied on the idea that disclosing these materials would hurt employee morale and recruitment and retention, whereas the District Court pointed out that it was really the defendants' actions that were reducing the number of employees and that were letting employees know that they were planning to downsize government. And so the District Court made findings on each of those factors, and the District Court is entitled to deference on it. I would also point out, Your Honor, that besides the relevant burden in terms of the application of the factors, defendants have the burden of establishing a clear error as a matter of law under this Court's precedent, under the mandamus standard. And this Court has been clear that even though there are multiple factors considered in deciding whether mandamus is appropriate, that factor is dispositive. And that's Inree Southbay, this Court's decision from 2021 makes that clear, as well as a number of other authorities. And Inree Morgan, which is cited in our papers, this Court's decision from 2007, this Court said that when there is no prior Ninth Circuit authority on point, the District Court's decision is not clearly erroneous. And so the mandamus... And some opposing counsel sites in the United States where that was very similar to this case, where Judge Wadford dissented and said the deliberative process has been very well implied, and then the Supreme Court agreed with Judge Wadford. How would you distinguish that case? Inree, United States, the Court did not say that it was error to order the administrative record to be produced. It did not overturn that as an error. It addressed the issues of law, and then it remanded for further consideration so that the District Court could decide whether a narrower production was appropriate or whether no production was appropriate. In this case, the District Court has exercised its discretion and determined that it is appropriate. The District Court does have an upcoming hearing on the motion to dismiss. The District Court was within its discretion to determine that the Supreme Court order did not end this case and to decide that limited discovery could begin to go forward. The parties that had our Rule 26 conference before the motion to dismiss was decided. And it would be a change in law for this circuit to rule that District Courts must address all of the legal issues in the case on a motion to dismiss before allowing any discovery or before allowing production of the administrative record in part to go forward. I've got a question as to the applicability or relevance of the information that you're seeking to discover. There were three of your seven claims that were not before us and did not go up into the Supreme Court to a stay and so on. And I understand that the information you're seeking to discover may be relevant to those three claims. Is the information you're seeking to discover relevant to the four claims that are before us and that went up to the Supreme Court on the stay? Yes, Your Honor. They are also relevant to those four claims. Can you help me understand the way in which they're relevant? Yes, Your Honor. Those claims challenged as a facial matter, the executive order and the memorandum. And the ARRPs would not necessarily shed light on a facial challenge. But those claims also, and I can tell you the specific paragraph numbers, said that those challenges, which were ultra-virus and APA challenges against OPM, OMB and DOJ, were that they included the memorandum, but that they also were not limited to the memorandum. Those also were challenges to the acts of OPM and OMB in approving and disapproving ARRPs, directing levels of cuts and types of cuts and imposing requirements on the agencies. And I would point, Your Honor, to paragraphs of the complaint, 396. That's the claim to 404, claim three, four and four, 16, claim five. I actually will amend my response a little bit. The ARRPs are not necessarily relevant to our first claim, the ultra-virus claim against the president. But they are relevant to the other three claims that were before this court. And Your Honor could look at those paragraph numbers. Part of what we challenge is that OMB, OPM and DOJ are directing cuts that force, that require the agencies to disregard their statutory responsibilities. And that's evidenced in some of the ARRPs that have also already been implemented. We can see that offices that were statutorily required were eliminated. For example, AmeriCorps is a statutorily mandated program. AmeriCorps was virtually eliminated by the cuts that were implemented and then adjoined. But that injunction is now on hold. And so those are the types of, that's the type of information that would be relevant to the unlawfulness of the directives that the implementing agencies were given. I would also, if this court has further questions about the district court's discovery order, I'm of course happy to answer those. If not, I would turn to the remand motion that we have. Mr. Baldi represented that we know exactly what the district court thinks about the Supreme Court's order and its implications. I would submit that that is not true. We do not know whether the district court would plan to modify its preliminary injunction, narrow its preliminary injunction, identify alternative bases for a preliminary injunction, or whether the district court would instead decide that it is most appropriate to wait for the factual development, the production of an administrative record, and discovery in this case, and then make a final ruling on the merits. There have been three relevant developments, as our motion points out, since the appeal was filed. The Supreme Court's stay order, which I agree with, Your Honor, that we do not fully know the basis for the Supreme Court's determination, but stated that plaintiffs were not likely to succeed on our facial challenges to the executive order and the memorandum. The second is the CASA decision, identifying the standard for the scope of our preliminary injunction and how that relates to the parties in the case. And then third, factual developments. For example, since the preliminary injunction was stayed, there have been reorganization and rifts at the State Department. There have been reorganization and rifts at the Department of Health and Human Services. Mr. Baldy represents that some of the agencies have changed their mind and decided not to engage in acts that were, at the time that we filed our complaint, imminent. He points as the source for that news reports, which highlights why we need the administrative record in this case and why we need the discovery in this case and certainly why the district court's very limited discovery order could not possibly be an abuse of discretion. The question for this court is whether this court should address those three developments in the first instance or whether this court should send it back to the district court for the district court to address those issues. Certainly, this court has the authority to do either. This court is not required to remand, but this court has quite often stated that it benefits from the district court's view, given that the district court is the closest to the facts and the developments of this case, and it would be appropriate for this court to hear from the district court. That will not deprive this court of the opportunity to review whatever the district court decides. This case will come back up if the district court enters a modified preliminary injunction or any type of preliminary injunction, or if the district court awaits a final ruling on the merits. It will come back up to this court, and there's no prejudice to either side from doing that. The preliminary injunction is not in effect. It will not be in effect in any time in the near future, given what the Supreme Court stated about how long the stay will remain in effect. Help me understand your second factor of the CASA case. The CASA decision said that an injunctive relief, that courts do not have the power to order injunctive relief that is any broader than what is necessary in order to provide relief to the plaintiffs. And the Supreme Court decided in that case, the birthright citizenship case, but it was sent to the lower courts to determine whether any other injunction was possible. That was an issue that was very disputed below, and now the Supreme Court has announced what the applicable standard is in terms of a preliminary injunction. And so the district court should have the opportunity to decide whether it wants to, if it believes that the Supreme Court stay order does not change the merits, it would also need to look at whether the CASA decision affects the scope of the injunction that it would order. Help me understand the timing. Did the district court rule before the Supreme Court ruled on the birthright citizenship scope? Yes. Yes, Your Honor. So it did not have the benefit of the Supreme Court's CASA decision at the time it entered the injunction. That is correct, Your Honor. Got it. I see that I have time left. If the court has any further questions, I'm happy to address them. It appears not, counsel. Thank you, Your Honor. All right. Thank you. Thank you. Thank you, Your Honor. I have four minutes and perhaps ambitiously I'm going to try to make five points. The first is to the extent that plaintiffs are pressing ultra-virus claims, I'd encourage this court to look at what the Supreme Court decided about a month and a half ago in Nuclear Regulatory Commission versus Texas, which was an ultra-virus challenge. When the Supreme Court said this is a hail Mary argument that rarely succeeds and that to state an ultra-virus challenge, you need to point to a clear statutory prohibition that the government has violated. It's not enough to just sort of have a dispute about whether the government is following the statute. And there is no claim that plaintiffs have stated that you come close to meeting that high burden. So authorized discovery on that basis is just not warranted. Second, to the extent that plaintiffs are challenging approval of the plans, you know, I think approval by another agency is not relevant to the finality of a plan. We, you know, we point to examples in our petition, but I would give you another example. Within OMB, there is OIRA, the Office of Regulatory Information Affairs. They are sort of an inter-agency coordinating body, and there's executive orders saying to agencies, you need to send your draft rules to OIRA for, you know, cost-benefit analysis for you to issue them. But OIRA approving the plan is not a final agency action. It doesn't transform this draft rule into a final agency action. It just says, you know, it's a box that the agency ticks. That's not the same thing as sort of approval as a final agency action. My friend points to the number of RIFs that were enjoined in the district court in the filing. In this court, the district court said that one of the reasons that it ordered discovery was to, because of this inaccuracy, it thinks there were only 31 RIFs enjoined instead of 40, that discovery is justified. I think, one, I think the number is immaterial, and we've sort of explained why this number was an estimate and how we calculated it. But, two, at most, that would justify the order the district court already issued to say, give us the list of how you got to 40 or 31 or whatever it is. It is not carte blanche to say privilege is overcome across the board in this case. Three, we talked about how the district court has discretion to manage discovery, and that's true. But this is an APA case. It's discovery against the executive branch. It's something that has to be managed carefully, and it should be a last resort, not a first resort. All those rules also apply. The idea that because of Rule 26 conference tapping, wide-ranging discovery can occur is just not how APA litigation works. And the fact that my friend and the fact that the district court thinks that that is how this should proceed, to me, is an example of how the framework of analysis is just not appropriate for this case, and that's the Newgrum case. And fifth, when we talk about the district court, how it analyzes the stay order, I would point you to docket 214, page 4, and footnote 4 on page 214. I think the district court has made clear that it wanted to see how it interprets this order. You know, the idea of sending this case back for more, or potentially, as Ms. Lane suggested, sending it back to not issue a new PI and just go wait until final judgment, I think deprives the government of the appeals entitled to buy right because of a preliminary injunction. And the best way to get there is to finish the briefing, set this case for argument, reach a decision. And if there's going to be further review, there will be further review, but we can move forward. The cost of decision, scope of relief, is about if you were to look at a decision tree of how you would get to scope of relief, it's about item number seven on the list. There's a lot of things you have to reach first. The district court also said that it believed it couldn't craft narrower relief. We think that's wrong as a matter of law, but, you know, it's unclear exactly how cost would affect that analysis. Do you disagree with your opposing counsel's statement that the information sought to be discovered would be relevant to at least three out of the four claims that did come before us? Yes, Your Honor. I think to the extent that they are challenging the executive order and the memorandum that were contemplating the creation of plans, plans issued after the fact could not possibly- You just gave me a qualified, you said to the extent that. Would you take out to the extent that out of your response? Yes, Your Honor. I don't think they're relevant. Because? Because, so I said to the extent that because it's not clear to me exactly what exactly the nature of these challenges are, but they're challenging, if they're challenging an executive order that said to agencies, create plans and a memorandum that said here's what these plans should contain, then those are- then the challenges to those two earlier in time documents, things that come afterwards in response to them necessarily are just not relevant. Does the landscape change from the time the district court issued its order with any relevant respect based on the Supreme Court's decision in the Briff Light Citizenship case and the extent of the injunction the Supreme Court's willing to contemplate? I don't think so. And the reason is, you know, we advance sort of the same arguments to the district court about how the scope of relief should be narrowed. The district court said that it didn't believe relief could be any narrower if it was necessary to enter an injunction this broad. We think that's- we would say that's wrong, but I don't think CASA changes that. If addressing only the question of scope of the injunction, do you think that the Supreme Court's injunction is too broad given the Supreme Court's decision in the Briff Light Citizenship case? Yes, Your Honor, but we thought it was too broad based on the precedent before that as well. But you would rely on the Briff Light Citizenship case as an argument against the scope of the injunction? We would, Your Honor. Yeah, okay. And if that's a reason to- that might be a reason to vacate the injunction. It's not a reason to deny the government its appeal. I know that I'm out of time. I would just like to renew our request that if the court denies relief, that it extend its administrative stay by seven days to allow the Solicitor General to seek further relief if he so chooses. All right, thank you, counsel. Thank you. Thank you to both counsel for your helpful arguments. The case, as argued, is submitted for decision by the court. We are adjourned. This court, for this session, stands adjourned.
judges: FLETCHER, RAWLINSON, IKUTA